UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFERY M. MEYERS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV01329 ERW |
| ) | |
| EUGENE STUBBLEFIELD, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Supplemental Motion for Summary Judgment [doc. #28].

**I. BACKGROUND FACTS**

Plaintiff Jeffery Meyers was incarcerated at the St. Louis City Justice Center pending trial for charges of robbery, armed criminal action, kidnaping, and forcible sodomy. St. Louis City Justice Center personnel evaluated Plaintiff, as well as his cell mate Darrell Nelson (Nelson), for classification. Based on this evaluation, both men were placed in the general prison population, and later assigned to share a cell. At the time of the incident at issue, Plaintiff had been incarcerated for approximately 60 days and living with Nelson for a little over one month. On the afternoon of May 27, 2006, Plaintiff and Nelson were involved in a physical altercation in their cell. Later that same day, between approximately 6:00 p.m. and 7:00 p.m., Nelson sexually assaulted Plaintiff. During the assault, Plaintiff claims to have pushed the emergency intercom

1

button, however, no correctional officer responded to the call.[1]

That same evening, following the incident, at approximately 7:40 p.m., Correctional Officer Federhofer conducted her hourly security check of Housing Unit 4C, the housing unit in which Plaintiff and Nelson were housed. Prior to this security check, Officer Federhofer had been on a thirty minute break, during which time her housing unit was monitored by another correctional officer.[2] When Officer Federhofer returned to Housing Unit 4C, she observed no alarm from Plaintiff's emergency intercom button, nor did she observe any altercation between Plaintiff and Nelson. The emergency intercom button in Plaintiff's cell was designed to sound an alarm when activated, which could only be turned off from the guard podium located in the housing unit. Plaintiff reported the sexual assault to Officer Federhofer when she conducted her 7:40 p.m. security check. Officer Federhofer notified her supervisor, Lieutenant Seymour, of the incident and Plaintiff was taken to the medical unit. Plaintiff was later taken to Barnes-Jewish Hospital where a rape kit was performed. Subsequently, an investigation of the assault took place and a report of the assault was filed with Detective Weiner of the St. Louis Police Department's Sexual Assault Unit. Following the incident Plaintiff was temporarily placed in an individual cell.

## II. PROCEDURAL HISTORY

As a result of the circumstances surrounding the sexual assault on May 27, 2006, Plaintiff filed suit against Defendants Eugene Stubblefield, Carl Gilmore, Leonard Edwards, Reginald

---

[1] In the Court's prior order, the Court stated that the Plaintiff did push the emergency intercom button; however, the affidavit testimony of Officer Federhofer refutes this claim.

[2] The particular floor on which Plaintiff was housed consisted of four Housing Units, each of which was supervised by an assigned correctional officer. The practice among the correctional officers is that three of the four correctional officers will go on break while one correctional officer remains on the floor to respond to emergency situations.

Moore, and Jerome Fields, alleging a violation of 42 U.S.C. § 1983 for failing to protect Plaintiff from an attack by a fellow inmate. On June 14, 2007, Defendants filed a Motion for Summary Judgement. On February 28, 2008 the Court denied Defendants' Motion for Summary Judgment, concluding that Defendants had failed to address Plaintiff's deliberate indifference claim based on Defendants' alleged failure to follow the institution's policies. However, the Court granted leave for the Defendants to file a supplemental motion for summary judgment addressing Plaintiff's claim of deliberate indifference on the basis of the correctional officers' failure to follow the proscribed policy guidelines. On March 28, 2008 the Defendants filed a Supplemental Motion for Summary Judgment. That motion is now fully briefed and the Court will address it at this time.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one

such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**IV. DISCUSSION**

Plaintiff brought suit against Defendants under 42 U.S.C. § 1983, seeking money damages for injuries sustained as a result of the May 27, 2006 sexual assault that Plaintiff alleges resulted from Defendants' failure to protect him against attack by his cell mate, and injunctive relief enjoining Defendants' current practices in supervising prisoners. After the Court issued its order denying Defendant's first Motion for Summary Judgment, the only issue remaining is whether the Defendants were deliberately indifferent to a substantial risk of harm by failing to follow the guidelines proscribed in the Inmate Handbook, thereby depriving the Plaintiff of his Fourteenth Amendment due process right to be safe from violence by other prisoners while confined.

"A claim under § 1983 must allege that conduct of a defendant acting under color of state law deprived a plaintiff of a right, privilege, or immunity secured by the constitution or the laws of the United States." *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001). Because Plaintiff was a pretrial detainee, not a convicted prisoner, the Fourteenth Amendment, not the Eighth Amendment, provides the applicable standard under which to examine Plaintiff's claim. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). Though the Fourteenth Amendment provides the substantive law under which Plaintiff may bring his claim, courts look to the Eighth Amendment's bar to cruel and unusual punishment, and the subset of deliberate indifference jurisprudence, to analyze failure to protect claims by pretrial detainees. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) ("Pretrial detainees and convicted inmates, like all persons in custody, have the same right to these basic human needs. Thus, the same standard of care is appropriate.").

The proper approach in considering Plaintiff's § 1983 claim for failure to protect is to first examine if "the conditions that result from the [alleged] failure to protect the inmate pose a

5

substantial risk of serious harm" to the Plaintiff, and secondly, whether the Defendants were "deliberately indifferent to [that] substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). The determination of a substantial risk of serious harm is an objective requirement that ensures "the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996). "A prison official is deliberately indifferent to a substantial risk of serious harm to an inmate if the official has . . . 'reckless disregard of a known excessive risk to inmate health and safety.'" *Burnley v. Evans*, 249 Fed. Appx. 492, 494 (8th Cir.2007) (quoting *Krein v. Norris*, 309 F.3d 487, 492 (8th Cir. 2002). Such reckless disregard of a known substantial risk may arise if an official fails to abide by prison policies, and it can be inferred that the official has knowledge that the purpose of those policies is to protect the safety and well-being of the inmates. *Hott*, 260 F.3d at 906 ("We must also consider . . . whether the plaintiff has produced evidence sufficient to allow her to proceed on the theory that Rieder's [correctional officer] conduct amounted to deliberate indifference to the safety of the inmates in the special needs cell block in general, including the risk of suicide."). From the facts before the Court, it cannot be said that a substantial risk of a serious harm existed, nor that correctional officers were deliberately indifferent to such a risk.

The uncontroverted facts before the Court demonstrate that the Defendant correctional officers did not violate the housing policy in force at the time of the incident. Officer Federhofer, the officer on duty in Plaintiff's housing unit acted in accordance with the St. Louis Justice Center's policy regarding supervision of prisoners. At the time of the incident, Officer Federhofer performed security checks and walk-throughs at least once an hour. Specifically, Officer Federhofer performed a security check of Plaintiff's housing unit before and after she left on her

6

30 minute break. During Officer Federhofer's break there remained on duty an officer within the housing area to oversee and respond to emergency situations within any of the four housing units on Plaintiff's floor. The Plaintiff has failed to provide any evidence that Defendants failed to follow the Inmate Handbook policies.

Defendants have met their initial burden for summary judgment by providing evidence controverting Plaintiff's claims. Plaintiff, through his failure to respond to Defendants' Supplemental Motion for Summary Judgment, and his reliance solely on the pleadings, has not met the requisite burden to sustain his suit beyond summary judgment. Therefore, Plaintiff's § 1983 claim for a deprivation of his Fourteenth Amendment right to be protected while held in confinement, based on the allegation that prison officials failed to follow the prison policy guidelines creating a substantial risk of serious harm, is without merit.

## V. CONCLUSION

Defendants have adequately demonstrated that the policies in the Inmate Handbook were followed by correctional officers on duty at the time of the incident at issue, thereby, foreclosing this as a basis for a claim of deliberate indifference toward Plaintiff's safety by the named Defendants. By meeting their burden of proof in their motion for summary judgment, Defendants have shifted the burden of demonstrating that genuine issues of material fact remain to the Plaintiff, who has completely failed to respond to Defendants' motion. The Court further notes that all other bases for relief were addressed by this Court's prior order on Defendants' first summary judgment motion, and therefore are not addressed in this opinion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Supplemental Motion for Summary Judgment [doc. # 28] is **GRANTED**.

Dated this 2nd Day of July, 2008.

_E. Richard Webber_ (signature)
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE